Beena M. McDonald (CA Bar ID 365776)
Steven A. Schwartz (*pro hac vice* forthcoming)
Timothy N. Mathews (*pro hac vice* forthcoming)
Holly E. Jones (*pro hac vice* forthcoming)
CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP
361 W. Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
bmm@chimicles.com
sas@chimicles.com
tnm@chimicles.com
hej@chimicles.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| KEVIN MELKOWSKI,<br><br>Plaintiff, individually and on behalf of all others similarly situated,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. _______________<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Kevin Melkowski ("Plaintiff"), by and through his undersigned counsel, hereby brings this class action against Defendant, Apple Inc. ("Defendant" or "Apple"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to his own acts and experiences, and as to all other matters, upon information and belief, including the investigation conducted by Plaintiff's counsel.

## INTRODUCTION

1. Plaintiff brings this class action on behalf of individuals who purchased iCloud+ subscriptions. Appealing to consumers' concerns about data privacy, Apple advertises iCloud+ as a premium subscription service that provides "enhanced privacy features that protect you and your data."[1]

2. One such feature is iCloud Private Relay. Apple claims that Private Relay protects users' privacy by masking their IP addresses and browsing activity when the feature is enabled in the Safari web browser. Apple represents Private Relay as an "internet privacy service" that "hides your IP address and browsing activity in Safari and protects your unencrypted internet traffic so that no one—including Apple—can see both who you are and what sites you're visiting." By claiming to route internet connections through two separate relays operated by different entities, Apple unequivocally claims that "no single entity has the information to identify both you and the sites you visit."

3. Consumers purchased iCloud+ subscriptions and enabled Private Relay, believing it would protect their IP addresses and browsing activity from exposure, as Apple advertised.

4. But contrary to Apple's representations, Private Relay does not ensure that "no one—including Apple—can see both who you are and what sites you're visiting." Independent researchers recently disclosed, and tests confirm, that several flaws in Apple's web engine system allow websites to bypass Private Relay and access users' IP addresses.

5. Apple knew or should have known that its representations about Private Relay's IP-masking capabilities were false. But Apple did not disclose that fact to consumers. Instead, Apple advertised, and continues to advertise, Private Relay as a feature that protects users' IP addresses and browsing activity from exposure. Apple intentionally misrepresents Private Relay's privacy capabilities to maintain and increase subscriptions to iCloud+.

[1] *iCloud*, Apple, https://www.apple.com/icloud/ (last visited Aug. 12, 2026).

6. As set forth herein, Apple has made misrepresentations and failed to disclose material facts about iCloud+ and iCloud Private Relay and committed unfair, deceptive, and misleading practices in connection with its marketing and advertising of iCloud+ and iCloud Private Relay.

7. Accordingly, Plaintiff brings this class action against Apple for its violations of the California Unfair Competition Law, the California False Advertising Law, the California Consumers Legal Remedies Act, fraud, negligent misrepresentation, breach of contract, and quasi-contract/unjust enrichment. Plaintiff seeks, individually and on behalf of those similarly situated, monetary damages incurred as a result of Apple's misrepresentations and omissions and to obtain injunctive relief mandating that Apple cease and correct false, deceptive, and unfair advertising relating to iCloud+ and iCloud Private Relay's privacy capabilities.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Plaintiff and Apple are domiciled in different states.

9. The Court has personal jurisdiction over Apple because its principal place of business is within this District and it has sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper and necessary.

10. Venue is proper in this District under 28 U.S.C. § 1391 because Apple resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## CHOICE OF LAW

11. California law applies because the iCloud Terms & Conditions contain a choice-of-law clause providing that "the relationship between you and Apple shall be governed by the laws of the State of California, excluding its conflicts of law provisions."[2]

## THE PARTIES

12. Plaintiff Kevin Melkowski is a citizen of Texas.

13. Plaintiff began subscribing to iCloud+ on or about September 20, 2021, possibly following an initial free month, and has paid Apple approximately $2.99 per month for his iCloud+ subscription.

14. Plaintiff enabled and used iCloud Private Relay, primarily on his iPhone, and understood that the feature was intended to operate like a VPN by concealing his IP address and browsing activity from anyone monitoring his internet activity.

15. Plaintiff would not have purchased an iCloud+ subscription, would have paid less for the subscription, or would have selected a different privacy solution if he had known that iCloud Private Relay did not protect his IP address and browsing activity as Apple represented.

16. Defendant, Apple Inc., is incorporated under the laws of the State of California and maintains its principal place of business in Cupertino, California.

## FACTUAL ALLEGATIONS

### A. Apple Promises Consumers Superior Privacy Protection.

17. Consumers deeply value privacy over their personal data and their activity online. According to a 2023 Pew Research Center study, 81% of U.S. consumers are concerned about how

[2] *iCloud Terms & Conditions*, Apple (Sept. 15, 2025), https://www.apple.com/legal/internet-services/icloud/us-en/terms.html.

companies use their data, and 73% feel they have little to no control over the data that companies collect about them.[3]

18. Recognizing the high value that consumers place on data privacy, Apple distinguishes itself from competitors by promising enhanced privacy benefits across its products and services. In a 2015 interview, Apple CEO Tim Cook stated that Apple "see[s] that privacy is a fundamental human right that people have."[4] Since then, Apple has centered its brand on this "fundamental human right."

19. For example, in a 2022 keynote speech, Cook declared that protecting privacy is "one of the most essential battles of our time." He called for "a strong comprehensive privacy law in the United States" and emphasized that Apple "stand[s] up for encryption without backdoors—because we know that if you install a backdoor, anyone can use it."[5]

20. Apple also maintains a webpage dedicated to "Privacy" on its website, where Apple prominently proclaims: "Privacy. That's Apple."[6]

---

[3] Colleen McClain et al., *How Americans View Data Privacy*, Pew Research Center (Oct. 18, 2023), https://www.pewresearch.org/internet/2023/10/18/how-americans-view-data-privacy/.

[4] NPR Staff, *Apple CEO Tim Cook: Privacy is a Fundamental Human Right*, NPR (Oct. 1, 2015), https://www.npr.org/sections/alltechconsidered/2015/10/01/445026470/apple-ceo-tim-cook-privacy-is-a-fundamental-human-right.

[5] Jedidiah Bracy, *Apple's Tim Cook: Protecting Privacy Most Essential Battle of Our Time*, IAPP (Apr. 12, 2022), https://iapp.org/news/a/apples-tim-cook-protecting-privacy-most-essential-battle-of-our-time.

[6] *Privacy*, Apple, https://www.apple.com/privacy/ (last visited Aug. 12, 2026).




21. On the same webpage, Apple continues: "Privacy is a fundamental human right. It's also one of our core values. Which is why we design our products and services to protect it. That's the kind of innovation we believe in."



22. And in the "Features" section of its Privacy webpage, Apple further promises that "[w]e're committed to protecting your data" and that Apple's "products and features include innovative privacy technologies and techniques designed to minimize how much of your data we — or anyone else — can access. And powerful security features help prevent anyone except you from being able to access your information."




23. Through this branding, Apple represents to consumers that its products and services offer superior privacy features and that Apple will keep their personal data secure.

**B. Apple Markets iCloud Private Relay as a Premium Feature Offering Enhanced Privacy.**

24. Apple sells the premium iCloud+ subscription service for between $0.99 and $59.99 per month. Apple markets iCloud+ as a service that affords consumers greater privacy over their personal data. According to Apple, "[w]hen you upgrade to iCloud+, you get even more storage along with enhanced privacy features that protect you and your data."[7]

25. One of the key features Apple advertises as part of iCloud+ is iCloud Private Relay, which Apple promotes as a privacy tool designed to protect users' IP addresses and browsing activity. Apple

[7] *iCloud Plans and Pricing*, Apple, https://support.apple.com/en-us/108047 (last visited Aug. 12, 2026).

markets Private Relay not merely as a bonus feature, but as a significant reason for users to subscribe to iCloud+ and pay the monthly subscription fee.

26. Apple claims that Private Relay "helps protect your privacy when you browse the web in Safari" and is "designed to protect your privacy by ensuring that when you browse the web in Safari, no single party—not even Apple—can see both who you are and what sites you're visiting."[8]

27. When Private Relay is enabled, a user's web traffic in Safari is sent through two separate "internet relays" that are supposed to anonymize the user's location data by replacing the user's IP address with a temporary IP address from a different location.[9]

28. Apple claims that "[a]ll of this is done using the latest internet standards to maintain a high-performance browsing experience while protecting your privacy."[10]

**C. Apple Knows Exposed IP Addresses Can Cause Serious Harm.**

29. To emphasize the privacy benefits of Private Relay, Apple tells customers that, "[n]ormally when you browse the web, information contained in your web traffic, such as your DNS records and IP address, can be seen by your network provider and the websites you visit," and warns that "[t]his information could be used to determine your identity and build a profile of your location and browsing history over time."[11]

30. Indeed, an exposed IP address can be harmful and potentially dangerous because it acts as a unique digital tracker that can link a user's physical location to their online behavior. Revealing a user's IP address can allow websites and advertisers to pinpoint the user's location, often down to their specific ZIP code.

---

[8] *About iCloud Private Relay*, Apple Support (Aug. 31, 2023), https://support.apple.com/en-us/102602.

[9] *Id.*

[10] *Id.*

[11] *Id.*

31. Bad actors can potentially combine that location data with public records to find the user's physical home address. Internet Service Providers (ISPs), ad networks, and websites can log every page the user visits. Over time, data brokers can stitch these logs into a detailed profile of the user's interests, including religion, health concerns, and finances.

32. Hackers can use an IP address to flood the user's home internet connection with junk traffic, and criminals can scan the user's specific IP address for open security vulnerabilities in their router or smart home devices to break into their home network.

33. Phishing campaigns and advertisements can also be tailored specifically to the user's local area to appear more convincing.

### D. iCloud Private Relay Fails to Protect Users' Privacy as Advertised.

34. Contrary to Apple's representations, iCloud Private Relay contains significant vulnerabilities that allow third parties to see both the user's IP address and the websites they visit.

35. On August 4th, 2026, security researchers Talal Haj Bakry and Tommy Mysk publicly disclosed that iCloud Private Relay fails to hide users' real IP addresses due to multiple flaws in Apple's "WebKit" browser engine.[12] These flaws affect all browsers on iOS and macOS that use WebKit, which includes Safari, the browser that supports Private Relay.

36. The researchers identified three specific WebKit features that bypass Private Relay and expose users' real IP addresses. One of these three features is WebAuthn, the WebKit technology that supports passkeys. According to Mysk, "any website that supports, or pretends to support, passkeys can see the user's real IP address despite having iCloud Private Relay on."[13]

---

[12] Talal Haj Bakry & Tommy Musk, *IP and DNS Leaks in WebKit Affecting Proxy Browsers and Apple iCloud Private Relay*, Mysk Blog (Aug. 4, 2026), https://mysk.blog/2026/08/04/webkit-proxy-icloud-private-relay-ip-leak/.

[13] Joseph Cox, *Apple's 'Private Relay' Is Exposing Users' Real IP Addresses*, 404 Media (Aug. 5, 2026), https://www.404media.co/apples-private-relay-is-exposing-users-real-ip-addresses/.

37. Apple has heavily promoted passkeys as a secure alternative to usernames and passwords that "eliminates the need for a password by using a unique digital key that only works from the site or app it was created for, so you don't have to worry about website leaks or phishing."[14] Yet in order for passkeys to function, a user's device must make a web request outside of the browser itself. This allows a website to bypass Private Relay, exposing a user's real IP address in the process.[15]

38. Using a website the researchers established to demonstrate these flaws in Private Relay, multiple independent journalists and technology publications have conducted tests and confirmed that their real IP addresses were revealed even with Private Relay enabled. TechCrunch verified that the demonstration site was able to reveal the publication's real IP address despite Private Relay being active.[16] 404 Media similarly tested the issues and confirmed that they expose real IP addresses.[17] CNET also tested the demonstration website using an iPhone 17 Pro and a MacBook Pro with iCloud Private Relay enabled, and the site correctly identified the tester's home internet router IP address.[18] These verified tests establish that the Private Relay failures are real and reproducible, and they affect actual user devices.

39. The impact of the problem is worsened because all browsers on iOS are required to use Apple's WebKit engine, which contains these features that enable identification of DNS and IP information. Thus, despite making unequivocal claims that "no one—including Apple—can see both who

---

[14] Privacy, Apple, https://www.apple.com/privacy/ (last visited Aug. 12, 2026).

[15] *Id.*

[16] Lorenzo Franceschi-Bicchieral, *PSA: Apple's Private Relay Can Leak Your Real IP Address*, TechCrunch (Aug. 5, 2026), https://techcrunch.com/2026/08/05/psa-apples-private-relay-can-leak-your-real-ip-address/.

[17] Cox, *supra* note 12.

[18] Jeff Carlson, *Apple's Private Relay Isn't So Private After All, Can Leak Your IP Address*, CNET (Aug. 5, 2026), https://www.cnet.com/tech/services-and-software/apples-private-relay-isnt-so-private-after-all-can-leak-your-ip-address/.

you are and what sites you're visiting," Apple's own system can generate direct requests that defeat that privacy.

40. Apple has not acknowledged or disclosed to consumers that Private Relay does not protect users' IP addresses as promised. Instead, Apple continues to market Private Relay as a premium privacy feature that masks users' IP addresses in order to sell more iCloud+ subscriptions.

**E. Consumers Were Misled into Purchasing iCloud+ Subscriptions Based on Apple's Misrepresentations and Omissions.**

41. Apple's representations about iCloud Private Relay's privacy capabilities, and its failure to disclose that the feature does not mask user's IP addresses and browsing activity as advertised, have misled reasonable consumers, including Plaintiff and the Class, into believing that Private Relay hides users' IP address and browsing activity in Safari when enabled.

42. These deceptive representations and omissions were material to consumers' decisions to purchase iCloud+ subscriptions, as Private Relay's IP-masking functionality is an attractive feature to reasonable consumers, who are deeply concerned about their privacy online.

43. Consumers that purchased the iCloud+ subscriptions, including Plaintiff and the Class, did not know and had no reason to know that Apple's representations about Private Relay's privacy capabilities were false, misleading, deceptive, and unlawful.

44. Apple knew or should have known that its representations were false, misleading, deceptive, and unlawful, yet it intentionally and deliberately concealed the Private Relay flaws and used the misrepresentations about its IP-masking functionality to induce Plaintiff and similarly situated consumers into purchasing iCloud+ subscriptions.

45. Plaintiff and the Class members would not have purchased an iCloud+ subscription or would have paid substantially less if they had known that iCloud Private Relay does not protect their IP address and browsing activity as Apple represented.

## CLASS DEFINITIONS AND ALLEGATIONS

46. Plaintiff brings this lawsuit under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3) as a representative of the:

> **Nationwide Class:**
> All persons within the United States who during the Class Period purchased an iCloud+ subscription.

47. The following persons and entities are excluded from the Class: Apple and its officers, directors, employees, subsidiaries, and affiliates; all judges assigned to this case and any members of their immediate families; and the parties' counsel in this litigation.

48. Plaintiff reserves the right to modify, change, or expand the Class definition, including proposing additional subclasses, based upon discovery and further investigation.

49. **Numerosity.** Apple sold at least thousands of iCloud+ subscriptions. Members of the Class are widely dispersed throughout the country. Class members are so numerous that joinder is impracticable.

50. **Typicality.** Plaintiff's claims are typical of the claims of all Class members. Plaintiff, like all Class members, purchased an iCloud+ subscription, which Apple deceptively and misleadingly advertised. Plaintiff, like all Class members, would not have purchased, or would have paid substantially less for, his iCloud+ subscriptions had he known that iCloud Private Relay feature did not protect his privacy in the way Apple deceptively and misleadingly advertised.

51. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to the interests of other Class members and are committed to vigorously prosecuting this case. Plaintiff has retained competent counsel experienced in the prosecution of consumer protection class actions involving misleading, deceptive, and unfair marketing practices.

52. **Commonality and Predominance.** Questions of law and fact common to the Class members predominate over questions that may affect only individual Class members, because Apple acted on grounds generally applicable to the Class as a whole. Questions of law and fact common to the Class include:

a. Whether Apple's advertising and marketing regarding the privacy capabilities of the iCloud Private Relay was false, misleading, deceptive, or unfair;

b. Whether Apple represented that the iCloud Private Relay feature possessed particular qualities, functions characteristics, uses, or benefits that were inconsistent with Apple's actual knowledge of them;

c. Whether Apple's advertising and marketing regarding the privacy capabilities of the iCloud Private Relay feature created a likelihood of deception or had the capacity to deceive;

d. Whether Apple knew or should have known that its advertising and marketing were and are misleading;

e. Whether Apple intended that its advertising and marketing mislead reasonable consumers;

f. Whether Plaintiff and Class members overpaid for their iCloud+ subscriptions as a result of Apple's false, misleading, deceptive, or unfair advertising and marketing;

g. Whether Plaintiff and Class members are entitled to equitable relief, including restitution and injunctive relief; and

h. Whether Plaintiff and Class members are entitled to damages or other monetary relief, and if so, in what amount.

53. **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because the amount of each individual Class member's claim

is small relative to the complexity of the litigation, and because of Apple's financial resources, Class members are not likely to pursue legal redress individually for the violations detailed in this complaint. Individualized litigation would significantly increase the delay and expense to all parties and to the Court and would create the potential for inconsistent and contradictory rulings. By contrast, a class action presents fewer management difficulties, allows claims to be heard which would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

54. Class certification is also appropriate under Rules 23(b)(1) and/or (b)(2) because:

i. The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Apple;

j. The prosecution of separate actions by individual Class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests; and

k. Apple acted and refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the members of the Class as a whole.

## **CLAIMS FOR RELIEF**

### **COUNT I**
**Violation of California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, et seq.**
**Individually and on Behalf of the Nationwide Class**

55. Plaintiff realleges and incorporates by reference all preceding and succeeding allegations as though fully set forth herein.

56. The California Unfair Competition Law ("UCL") prohibits unfair competition and

provides that “unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising.” Cal. Bus. & Prof. Code § 17200.

57. Defendant made false and misleading statements about the privacy capabilities of iCloud Private Relay to market and sell iCloud+ subscriptions. Defendant claimed in its advertising and marketing that Private Relay anonymized users’ IP addresses, even though the WebKit flaws allowed websites to see a user’s IP address even with Private Relay enabled.

58. Defendant’s false and misleading advertising and marketing of iCloud+ and the iCloud Private Relay feature constitute unlawful, unfair and fraudulent business practices and deceptive, untrue, and misleading advertising under the UCL.

59. Defendant’s conduct was “unlawful” because it violated the California False Advertising Law, as alleged herein.

60. Defendant’s conduct was “unfair” because it caused substantial injury to Plaintiff and the Class members that was not reasonably avoidable for outweighed by countervailing benefits to consumers or competition. Plaintiff and the Class members’ iCloud+ subscription payments constitute substantial economic injury because they would not have purchased or would have paid less for their subscriptions had they known Defendant’s statements about Private Relay’s privacy capabilities were false. They could not reasonably avoid this injury, as Apple alone possessed the facts necessary to avoid injury and concealed them.

61. Defendant’s conduct was “fraudulent” because Defendant’s false and misleading statements deceived and are likely to deceive reasonable consumers, including Plaintiff and the Class, into believing that if they purchased iCloud+ and enabled Private Relay, their IP addresses and browsing activity would not be exposed when browsing in Safari. Plaintiff and the Class relied on Defendant’s deceptive statements in deciding to purchase their iCloud+ subscriptions.

62. Defendant's statements constitute "deceptive, untrue, and misleading" advertising because Defendant sells iCloud+ subscriptions by falsely representing that Private Relay hides users' IP addresses and browsing activity.

63. Plaintiff and the Class members have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's false and misleading statements. Plaintiff and the Class overpaid for their iCloud+ subscriptions because Private Relay did not provide the IP-masking capabilities Apple represented.

64. As a direct and proximate result of Defendant's conduct in violation of the UCL, Plaintiff and the Class Members suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for iCloud+, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement to compensate Plaintiff and the Class Members for their economic losses, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

## COUNT II
**Violation of California False Advertising Law**
**Cal. Bus. & Prof. Code § 17500**
**Individually and on Behalf of the Nationwide Class**

65. Plaintiff realleges and incorporates by reference all preceding and succeeding allegations as though fully set forth herein.

66. The California False Advertising Law ("FAL") makes it unlawful for any person or entity to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" in connection with the sale of real or personal property or services. Cal. Bus. & Prof. Code § 17500.

67. Defendant violated the FAL by advertising the iCloud Private Relay feature as having the ability to mask users' IP addresses and browsing activity. These statements were untrue and misleading

because the WebKit flaws allowed websites to see users' IP addresses even with Private Relay enabled.

68. Defendant's untrue and misleading advertising statements are likely to deceive, and did deceive, reasonable consumers, including Plaintiff and the Class, into believing that if they purchased iCloud+ and enabled Private Relay, their IP addresses and browsing activity would not be exposed when browsing in Safari.

69. Plaintiff and the Class purchased iCloud+ subscriptions based on Defendant's untrue and misleading statements about Private Relay's privacy capabilities described above.

70. Defendant knew or should have known that the representations were untrue and misleading. If Defendant had exercised reasonable care, Defendant, like the researchers that disclosed the WebKit flaws, would have known that its statements about Private Relay's privacy capabilities were untrue and misleading.

71. As a direct and proximate result of Defendant's conduct in violation of the FAL, Plaintiff and the Class Members suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for iCloud+, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement to compensate Plaintiff and the Class Members for their economic losses, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

72. Defendant's conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious because Defendant acted with the intent to cause Plaintiff and consumers to purchase the iCloud+ subscription service without providing the advertised features. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers, as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including

Plaintiff. Defendant's misconduct is oppressive and subjected Plaintiff and consumers to unjust hardship, and knowingly disregarded their rights. Defendant's misconduct is fraudulent because Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers.

**COUNT III**
**Violation of California Consumers Legal Remedies Act**
**Cal. Civ. Code §§ 1750, *et seq.***
**Individually and on Behalf of the Nationwide Class**

73. Plaintiff realleges and incorporates by reference all preceding and succeeding allegations as though fully set forth herein.

74. The California Consumers Legal Remedies Act ("CLRA") provides that "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful." Cal. Civ. Code § 1770.

75. The iCloud+ subscriptions are "services" under the CLRA because they are services purchased for personal use, not a commercial or business use.

76. Defendant is a "person" under the CLRA because it is a corporation.

77. Plaintiff and the Class members are "consumers" under the CLRA because they are individuals who purchased services for personal use.

78. Plaintiff's and the Class members' purchases of the iCloud+ subscriptions are "transactions" under the CLRA because they constitute agreements to purchase services from Defendant.

79. Through its false and misleading statements about iCloud Private Relay's IP-masking capabilities, Defendant violated the CLRA by representing that the iCloud+ subscriptions have "characteristics, . . . uses [or] benefits . . . which they do not have," Cal. Civ. Code § 1770(a)(5); by representing that the iCloud+ subscriptions "are of a particular standard, quality, or grade . . . when they

are of another," Cal. Civ. Code § 1770(a)(7); and by advertising the iCloud+ subscriptions "with intent not to sell them as advertised." Cal. Civ. Code § 1770(a)(9).

80. Defendant's uniform and material representations regarding the iCloud+ subscriptions' privacy capabilities were likely to deceive reasonable consumers, and Defendant knew or should have known that they were misleading and deceptive.

81. Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information about Private Relay's IP-masking capabilities from consumers, including Plaintiff and the Class members, to increase the sale of the iCloud+ subscriptions.

82. Plaintiff and the Class members suffered harm as a result of Defendant's violations of the CLRA because they relied on the Defendant's representations about Private Relay's privacy capabilities, and the representations were a material and substantial factor in deciding to subscribe to iCloud+.

83. Plaintiff and the Class members could not have reasonably avoided such injury. Plaintiff and the Class members were unaware of the existence of the facts that Defendant failed to disclose. Had they known the true facts, Plaintiff and the Class Members would not have purchased the iCloud+ subscriptions or would have paid less or purchased them on different terms had they known the truth.

84. Pursuant to Section 1780(a) of the CLRA, Plaintiff seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendant, including, but not limited to, an order enjoining Defendant from continuing to make the misleading claims challenged herein and requiring Defendant to correct its prior false and misleading representations. Plaintiff also requests a court order requiring Defendant to provide restitution to Plaintiff and the Class members for the money wrongfully acquired. Unless this injunctive relief is granted, Plaintiff will suffer irreparable harm.

85. Injunctive relief is appropriate on behalf of Plaintiff and the Class because Defendant has

failed to disclose that iCloud Private Relay does not conceal users' real IP addresses as advertised. Injunctive relief is necessary to correct past harm and prevent future harm, none of which can be achieved through available legal remedies.

86. Additionally, Plaintiff will be serving a demand on Defendant and reserves the right to amend to seek damages.

**COUNT IV**
**Fraud**
**Individually and on Behalf of the Nationwide Class**

87. Plaintiff realleges and incorporates by reference all preceding and succeeding allegations as though fully set forth herein.

88. Defendant affirmatively misrepresented the privacy capabilities of the iCloud+ subscriptions when selling and marketing them.

89. Defendant knew that a reasonable consumer would rely on its misrepresentations regarding the privacy capabilities of the iCloud+ subscriptions and that its misrepresentations would be material to consumers' decision to subscribe to iCloud+.

90. Plaintiff and the Class members did not know, nor could they have known through reasonable diligence, about the true nature of the iCloud+ subscriptions.

91. Plaintiff and the Class members reasonably relied on Defendant's misrepresentations in making their purchasing decision.

92. Plaintiff and the Class members sustained damages as a result of their reliance on Defendant's misrepresentations, thus causing Plaintiff and the Class members to sustain actual losses and damages.

**COUNT V**
**Negligent Misrepresentation**
**Individually and on Behalf of the Nationwide Class**

93. Plaintiff realleges and incorporates by reference all preceding and succeeding allegations as though fully set forth herein.

94. Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the development, marketing, and sale of the iCloud+ subscriptions.

95. Defendant breached its duty to Plaintiff and the Class by advertising the iCloud+ subscriptions as having capabilities they do not actually have—namely, that the Private Relay feature would hide their IP addresses and browsing activity.

96. Defendant knew or should have known that the qualities and characteristics of the iCloud+ subscriptions were not as advertised and that the subscriptions were not suitable for their intended use and were otherwise not as represented by Defendant.

97. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they would not have purchased the iCloud+ subscriptions had they known that they do not conform to Apple's marketing, advertising, or statements.

98. Plaintiff and the Class seek actual damages, attorneys' fees, costs, and any other just and proper relief available.

## COUNT VI
**Breach of Contract**
**Individually and on Behalf of the Nationwide Class**

99. Plaintiff realleges and incorporates by reference all preceding and succeeding allegations as though fully set forth herein.

100. Defendant expressly promised that the iCloud+ subscriptions would perform as advertised. Defendant's claims regarding the iCloud+ subscriptions constituted an affirmation of fact, promise, and/or description of the services that became part of the basis of the bargain. Plaintiff and the Class members placed importance on Defendant's claims.

101. Plaintiff and the Class members performed all their obligations under the contract.

102. Defendant breached the terms of the contract by not providing iCloud+ subscriptions as they were advertised.

103. As a result of Defendant's breach of contract, Plaintiff and the Class members have been damaged in the amount to be determined at trial.

**COUNT VII**
**Quasi-Contract / Unjust Enrichment**
**Individually and on Behalf of the Nationwide Class**

104. Plaintiff realleges and incorporates by reference all preceding and succeeding allegations as though fully set forth herein.

105. This cause of action is alleged in the alternative to Plaintiff's and the Class's breach of contract cause of action.

106. Plaintiff and the Class members conferred monetary benefits on Defendant by paying monthly subscription fees for iCloud+.

107. Defendant knew that Plaintiff's and the Class conferred a benefit which Defendant accepted.

108. Defendant was unjustly enriched in retaining Plaintiff's and the Class members' iCloud+ subscription payments because retention of those payments under these circumstances is unjust and inequitable. Defendant failed to disclose that, contrary to its express representations, iCloud+ Private Relay did not hide users' IP addresses and Safari browsing activity, and absent those misleading representations and omissions, Plaintiff and the Class members would not have purchased iCloud+ subscriptions or would have paid less for those subscriptions.

109. Because Defendant's retention of the benefits conferred on them by Plaintiff and the Class members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined

at trial.

**PRAYER FOR RELIEF**

110. WHEREFORE, Plaintiff, individually and on behalf of members of the Class, respectfully request that the Court certify the proposed Class, designate Plaintiff as Class representative, appoint the undersigned as Class Counsel, and enter an Order providing for the following:

a. An Order permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

b. Injunctive relief, including Orders that Apple cease and correct its false, deceptive, and unfair advertising relating to iCloud+ and iCloud Private Relay's privacy capabilities;

c. An Order requiring Apple to correct the false information in its advertising and marketing of iCloud+ and iCloud Private Relay;

d. Compensatory damages—including for overpayment at the point of sale to Plaintiff and Class members in an amount to be proven at trial;

e. Other costs, restitution, damages, including punitive damages, penalties, and disgorgement in an amount to be determined at trial;

f. An Order requiring Apple to pay both pre- and post-judgement interest on any amounts awarded;

g. An award for reasonable attorneys' fees and costs as permitted by law; and

h. An Order entering such other relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury for all claims so triable.

Dated: August 12, 2026 Respectfully submitted,

*By:* *\/s/ Beena M. McDonald*

Beena M. McDonald (CA Bar ID 365776)
Steven A. Schwartz (*pro hac vice* forthcoming)
Timothy N. Mathews (*pro hac vice* forthcoming)
Holly E. Jones (*pro hac vice* forthcoming)
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Phone: 610-642-8500
Fax: 610-649-3633
bmm@chimicles.com
sas@chimicles.com
tnm@chimicles.com
hej@chimicles.com

*Counsel for Plaintiff and the Proposed Class*